IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1877.

### Eastwick *et al. versus* Saylor.

Where a party, in a lawful manner, with the plaintiff's consent, interferes in an action of ejectment for the purpose of testing his own title and trying his own right of possession, the fact that he thus united with other defendants in the ejectment to maintain possession as against the title of the plaintiff, does not render him jointly liable with said defendants for mesne profits, when he could not prevent the trespasses or did not aid, abet or encourage their commission.

June 11th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Northumberland county:* Of May Term 1877, No. 80.

Trespass commenced on the 26th of March 1867 by Henry Saylor, Levan Mannerback and Jacob Hoffman, against Andrew M. Eastwick, Samuel John, U. Frank John, Kersey John, Jefferson John, James Malone and The Green Mountain Coal Company, wherein the plaintiffs complained, by their declaration filed March 18th 1868, that the defendants, on the 26th December 1855, and on divers other days and times between that day and the commencement of the suit, broke and entered the close of the plaintiffs, in Mt. Carmel township, Northumberland county, surveyed upon a warrant to John C. Heylman, containing one hundred and seventy-six acres and eighty-three perches, and mined and carried away large quantities of coal therefrom and injured the said coal mines by unskil-

(15)

[Eastwick *v.* Saylor.]

ful working and mining therein, and also cut and carried away timber growing thereon.

At the time of the first trial of the cause, December 28th 1868, the plaintiffs, by leave of court, amended their *narr.* by striking out the 26th December 1855, and inserting June 1st 1863, and by striking out "the commencement of the suit" and inserting, in lieu thereof, October 24th 1864; thus limiting the continuance of the trespasses complained of from the 1st day of June 1863, until the 24th day of October 1864; during which period the said three plaintiffs, Saylor, Mannerback and Hoffman, were the tenants in common of the John C. Heylman warrant and survey, as appeared by the deeds given in evidence by them. The verdict in favor of the plaintiffs and against all of the defendants, for the sum of $1360.20, was, on application of the defendants, set aside by the court and a new trial granted.

On the 3d January 1873, and after the death of Jacob Hoffman, one of the plaintiffs, had been suggested upon the record, on the application of Henry Saylor, and under objection and exception by defendants, the court permitted the plaintiff to amend the record by striking out the names of Levan Mannerback and Jacob Hoffman, as co-plaintiffs with Henry Saylor, and also to amend the declaration by striking the names of Jacob Hoffman and Levan Mannerback from the same, and to withdraw the amendment to the declaration previously made, so as to make the declaration read as originally filed. Subsequently the defendants, by leave of the court, each, in addition to his plea of not guilty, previously pleaded, severally pleaded the Statute of Limitations.

The case was again called for trial and jury sworn, on the 16th November 1874, and on the 4th December 1874, after the testimony was closed, the plaintiff, with leave of the court, and under objection by defendants, again amended the *narr.*, " so as to limit the time within which the alleged trespasses were committed, and for which mesne profits were claimed, to, from and after the 1st day of July 1863." Upon the 5th day of December 1874, the jury found in favor of Henry Saylor and against Samuel John, Andrew M. Eastwick and The Green Mountain Coal Company, three of the defendants, the sum of $18,000, and found in favor of the other defendants.

The plaintiff claimed title to the *locus in quo*, under a survey made upon the 9th day of March 1855, by virtue of a warrant to John C. Heylman, dated March 2d 1855, and a patent, dated March 14th 1855, from the Commonwealth, for one hundred and seventy-six acres eighty-three perches, in Mt. Carmel township, Northumberland county, to Jacob M. Sallada, to whom a deed poll was made by John C. Heylman March 13th 1855. He also gave in evidence sundry conveyances from Sallada to several parties, and from them

[Eastwick v. Saylor.]

to Saylor, whereby it appeared that on the 9th of August 1865 he had become the sole owner of the title to the tract in dispute.

Upon the trial of the cause, the plaintiff gave in evidence, under exception by the defendants, the record of a suit in ejectment, instituted December 26th 1855, in the Court of Common Pleas of Northumberland county, No. 50, January Term 1856, by Jacob M. Sallada against Kimber Cleaver, James Malone and David Kreigbaum, for the recovery of the possession of the land surveyed on the warrant to John C. Heylman. In that case, as appeared by the record, the death of Kimber Cleaver, one of the defendants, was suggested, April 16th 1859, and it was also suggested that he was a tenant at will and that his interest had expired. On the same day, the names of Robert Hays and Henrietta Elliott, executors of John Elliott, deceased, were suggested and added as co-defendants. On May 10th 1864, "on motion of Jacob Hoffman, Esq., the court permitted the names of Henry Saylor and Levan Mannerback to be added as co-plaintiffs, they having become purchasers of part of the land included in the writ of ejectment since the institution of the suit," and the trial having been ordered and jury called, there appeared upon the margin of the book containing the minutes of the court's proceedings of that day, the entry, in the handwriting of the prothonotary, " Andrew M. Eastwick substituted as co-defendant by consent."

The parties then stood upon the record as thus amended, at the time of the trial of the ejectment: Jacob M. Sallada, Henry Saylor and Levan Mannerback v. James Malone, Daniel Kreigbaum, Robert Hays and Henrietta Elliott, executors of John Elliott, deceased, and Andrew M. Eastwick, and a verdict was rendered May 13th 1864, on which judgment was entered May 23d 1864, in favor of the said plaintiffs, for the three undivided fourth parts of the land described in the writ, except a strip of land twenty-four perches wide, extending across the southern end of the Heylman survey. This judgment having been affirmed by the Supreme Court, the plaintiffs, Sallada, Saylor and Mannerback, caused to be issued a writ of habere facias possessionem, returnable to August Term 1865, for the whole of the tract described in the writ, although they had recovered but the three undivided fourth parts, and under it they had delivered to them, by the sheriff, May 1st 1865, the possession of the premises.

Samuel John, who was then in possession of the Green Mountain Colliery, including, along with other property, that portion of the land within the lines of the Heylman survey lying west of the north-eastern branch of the Shamokin creek, containing forty-one acres and one hundred and forty-two perches, and was working two of the coal drifts therein, as the tenant of the Green Mountain Coal Company, presented his petition to the court upon the 8th May 1865, setting forth these facts and that his lessors held or claimed

4 NORRIS—2

[Eastwick *v.* Saylor.]

to hold and own that part of the land by title prior to the commencement of ejectment; that they were not parties to the said action, No. 50, January Term 1856, and were not bound by the proceedings and judgment therein. Upon this petition the court granted a rule, returnable on the first day of the next term (first Monday of August 1865), to show cause why the writ of habere facias should not be set aside, and directed that all further proceedings under the writ should be stayed.

Upon the 14th August 1865, counsel for the defendants moved the court that the writ of habere facias be set aside at the cost of the plaintiffs, because the said writ was not issued in pursuance of the judgment entered in this case, but directed the sheriff to deliver the whole of the tract of land therein mentioned to the plaintiffs, whereas they only recovered, by the judgment of the court, three undivided fourth parts of the said tract, and that the sheriff be ordered by the court to restore the possession to the defendants. On August 15th 1865, the court set aside the execution at the cost of the plaintiffs.

The plaintiffs, Sallada, Saylor and Mannerback, then issued, to No. 13, November Term 1865, an alias writ of habere facias possessionem, against the same defendants, and following the terms of the judgment, upon which the sheriff returned, that upon the 26th August 1865, he delivered to Henry Saylor the possession of the within mentioned premises, with the appurtenances, as within he was commanded, by going upon the premises with him and giving him actual possession thereof.

Henry Saylor subsequently commenced another action of ejectment, on the 20th September 1865, against Andrew M. Eastwick, Robert Hays and Henrietta Elliott, executors of John Elliott, deceased, Samuel John, U. F. John, Ulysses John and Samuel Reese, for the recovery of the possession of the one undivided fourth part of the John C. Heylman survey, the record of which, under exception by defendants, was also given in evidence by the plaintiff. In this suit, the writ was returned served on Samuel John, U. F. John, J. M. John, Samuel Reese and James Richards, the Green Mountain Coal Company, and C. S. Boyd, agent of the Green Mountain Coal Company, and on A. M. Eastwick, and on the 7th March 1867, judgment was entered by default for one-fourth of the land described in the writ, undivided, against Samuel John, U. F. John, the Green Mountain Coal Company, J. M. John, Andrew M. Eastwick, Samuel Reese and James Richards. A writ of habere facias, issued upon the judgment, was returned executed March 9th 1867, by delivering possession.

It was not shown, upon the trial of the cause, that any acts of trespass had been committed upon any portion of the land covered by the Heylman survey lying east of the north-eastern branch of the Shamokin creek, nor was it in evidence that Andrew M. East-

[Eastwick *v.* Saylor.]

wick had ever committed, or authorized the commission of any of the trespasses complained of, on the western side of the said creek. There had been no concert of action between him and Samuel John and the Green Mountain Coal Company, or either of them, in reference to the alleged trespasses upon any part of the Heylman tract, and it was not shown that he made any claim to, or was ever upon the portion of the tract lying west of the creek, or west of the line of the Green Ridge Branch Railroad, constructed upon the banks of said creek, or that he had any knowledge of the fact that the Green Mountain Coal Company and their tenant, Samuel John, had mined, or were mining coal or cutting timber thereon. It did not appear that he and they ever had any joint tenure, or interest in the premises, but upon the contrary the Green Mountain Coal Company, and those under whom they claimed, by title prior to the commencement of the first action of ejectment, No. 50, January Term 1856, limited their possession and confined their claim of ownership to that portion of the land lying west of the Green Ridge Railroad, while A. M. Eastwick, who held under a sheriff's deed, dated August 6th 1857, designating the line of said railroad as his western boundary, only claimed the two undivided third parts of the land lying upon the eastern side thereof; the other undivided one-third belonging to the estate of John Elliott, deceased.

Upon the trial of this suit in the court below, the defendants contended that the whole of the land covered by the Heylman survey, as well that portion on the western side of the railroad, claimed by the Green Mountain Coal Company, as that on the eastern side, claimed by Andrew M. Eastwick and the executors of John Elliott, deceased, had been previously appropriated and belonged to them, in the manner and proportions stated, by virtue of an older and superior title, and that at the time of the application for the warrant issued to John C. Heylman the land upon which it was located was not vacant, nor subject to appropriation by warrant and survey.

The chief question passed upon by this court was whether Eastwick, by his acts and relation to these suits, had so interfered that the records in these ejectments were conclusive of his liability for damages done on the land by the several defendants for the time claimed and whether he was jointly liable with them. Upon this question the plaintiff submitted the following points, all of which the court affirmed :—

1. That the records of the ejectment suits in evidence, and the title exhibited by the plaintiff, show his right to three-fourths of all the damages occasioned by the defendants in the land in controversy sustained from the 1st day of July 1863, up to the 9th day of August 1865, and all the damages sustained as aforesaid since that date.

5. That as a matter of law the plaintiff, Henry Saylor, is en-

titled to recover from A. M. Eastwick, the .Green Mountain Coal Company and Samuel John three-fourths of all damages done by them to the land within the lines of the Heylman survey, and west of the north branch of the Shamokin creek, from the 1st day of July 1863 to the 9th day of August 1865, and all of such damages since the 9th of August 1865, and prior to the commencement of this suit.

6. That the records of the ejectment suits in evidence, and the absence of all evidence that said Eastwick ever surrendered possession of the land west of the north branch of the Shamokin creek within the Heylman survey to the plaintiff in said ejectment, or either of them, or to any one in their behalf, are *conclusive* evidence of his liability for damages done to said land from the time Samuel John entered thereon in 1863, to the time of the delivery of possession to Saylor in 1867.

7. That Samuel John is liable for all damages done by him to said land after his entry in 1863, and the Green Mountain Coal Company, having put him in possession as their tenant, having authorized the construction of the lateral road on said land in order to take away the coal from drifts three and four, having taken up the railroad iron from said lateral road, and put the same in the possession of Samuel John, near the drift number two, and which was then taken by John and used in his mines on the Green Mountain Company's land, also entered upon under said lease, are jointly liable with said John for all damages done by him by reason of their having placed him in possession of said land, and the other facts before recited.

8.. That by reason of the facts stated in the two preceding points, as well as all the evidence in the cause, A. M. Eastwick, Samuel John and the Green Mountain Coal Company are jointly liable for all the damages done by said John on said land by reason of cutting down and destroying the timber thereon, and by his mining and taking coal from drifts number three and four ; by reason of his unskilful mining, and by leaving coal in the ground so obstructed by his acts as to destroy its value.

The court, Elwell, P. J., in their general charge, said :— .

" The evidence does not show that Andrew M. Eastwick shared in the business with John and the Green Mountain Coal Company, but the records show that he appeared to the first ejectment, was made a party by his own consent, resisted a recovery of the whole or any part of the land by the plaintiff, carried the same to the Supreme Court, and, after the decision there, still further resisted the plaintiff's title, taking defence with Samuel John and the Green Mountain Coal Company for the whole tract, and maintaining his possession until the execution of the writ of habere facias. The records of these ejectments, in the absence of all evidence that he ever surrendered possession of the land west of the north branch

[Eastwick *v.* Saylor.]

of the Shamokin creek within the Heylman survey to the plaintiff, are conclusive of his liability for damages done to the land from the time Samuel John entered to the time of delivery of possession to the plaintiff in 1867. While the plaintiff was out of possession he could not from day to day bring actions of trespass for injury to his land. He was obliged to wait until he regained the possession wrongfully withheld from him. All persons who came in after the institution of the first ejectment, and interfered with the plaintiff in regaining his possession, became liable for the mesne profits and jointly liable with those who actually received the profits. In other words, he makes himself responsible for the acts of all persons in possession and jointly with them. In an action of trespass against several the plaintiff cannot recover several damages where the evidence of separate trespass is objected to. In this case the plaintiff can recover against two or more of the defendants only, by showing that they are jointly liable for the trespass complained of. In view of this, as the law, the plaintiff does not now claim at your hands a verdict against any of the defendants but Samuel John, the Green Mountain Coal Company and Andrew M. Eastwick."

The verdict was for the plaintiff against all the defendants for the sum of $18,000, who took this writ, assigning for error, inter alia, the admission in evidence of the records in the ejectment suits, the foregoing answers of the court to plaintiff's points and the portion of the charge noted.

*Joshua W. Comly, John B. Packer* and *George Hill,* for plaintiffs in error.—Eastwick did not enter and never claimed possession of or any title or interest in the part of the land upon which the alleged tortious acts were committed, and yet by this verdict he is held liable upon the evidence furnished by the records in these ejectment suits. The only appearance by Eastwick was on the 10th of May 1864 when the record shows that he " was substituted as co-defendant by consent." There was no evidence of privity between him and the other parties to the ejectments, nor could his irregular admission upon the record be held to have relation to the time of the commencement of the action nor be construed as an admission on his part that he had been in possession of the whole of the tract from that time or any other, in the face of the fact that when admitted upon the record he only claimed a part. Eastwick and the other defendants were not tenants in common and never claimed any interest in common in the premises, and the acts of John, the lessee of the company, were without his knowledge or consent. The other defendants did not claim the land west of the creek jointly with Eastwick, but independently of and adversely to him ; there was no concert of action between him and them in relation to the possession thereof nor in any acts done by

them thereon, and it is difficult to conceive therefore why Eastwick uniting with these defendants in the ejectment, should make him jointly liable with them.

*S. P. Wolverton, John W. Ryon* and *F. W. Hughes*, for defendants in error.—When Eastwick came upon the record as a co-defendant, the only plea upon the record was " not guilty," and he took issue with the plaintiff for all the land described in the writ.    If he claimed but a part he should have put a disclaimer upon record as to the residue which he did not claim.    During the trial no evidence was given to limit the claim of Eastwick to any less than the whole of the land ; but the evidence showed that Eastwick had concerted with the other defendants, resisted the right of the plaintiff to the possession of any portion of the Heylman survey, and by means of his active co-operation, the trespasses of which the plaintiff complained had been committed.    He had gone voluntarily upon the record of the first ejectment as a co-defendant, and had taken issue for the whole of the land described in the writ.    He neither disclaimed title to any part of the land, nor exhibited any evidence upon the trial of a title to any less than the whole.    He removed the case to the Supreme Court ; resisted and set aside plaintiff's writ of habere facias by his appearance and plea to the second action of ejectment ; he assisted to keep the plaintiff out of possession of his lands from August 1865, until the 9th of March 1867, and in all these acts he co-operated with and aided and assisted Samuel John and the Green Mountain Coal Company in committing the trespasses which resulted in the verdict for the plaintiff in this case.

Mr. Justice Gordon delivered the opinion of the court, October 1st 1877.

A party owning the freehold and entitled to the possession, having entered, may maintain trespass against the deforcer and recover for mesne profits in the same manner and with the same effect as though put into possession by process after recovery in ejectment. Let us suppose Saylor to have entered without suit and to have obtained the possession against the defendants, it is certain, in such case, with no other facts than those now before us, he could not maintain a joint action against the Green Mountain Coal Company, John, its lessee, and Andrew M. Eastwick ; in other words, he could not charge Eastwick with damages resulting exclusively from the operations of John and the coal company, and with whom Eastwick was in no kind of privity.    Again, let us suppose these parties defendant to have held under different and adverse titles, and that Saylor had brought suit and recovered against Eastwick alone—the title and possession of the coal company remaining undisturbed—it will, we presume, be conceded that he would not,

[Eastwick *v.* Saylor.]

in that event, be responsible for profits derived from the land by the company, for here there is clearly no unity or concert of action between the parties. But how can it change the result that they are sued together and judgment and execution had against both? Each has the right to defend his own possession and test his own title; and if, whilst this is in process, one digs coal or cuts timber upon the premises, by no process of reasoning can the other be made liable for that which he did not encourage and could not prevent. It is urged, however, that by interfering in the ejectment and having his name put of record as co-defendant, Eastwick hindered and delayed the plaintiff in the recovery of the possession, wrongfully withheld from him, and so made himself responsible for the profits in the meantime received by the others. But this proposition seems to us unsound for two reasons: 1. Eastwick was admitted to defend by the consent of plaintiff, and it is doubtful whether, without such consent, he could have been so admitted, for it nowhere appears that there was any such privity of title or possession between him and the original defendants as would have entitled him to substitution as of right. Such being the case, the plaintiff cannot be heard to complain of the results of his own act. 2. It is not apparent how the matter was delayed by Eastwick's interposition, or how a judgment against Cleaver, Malone and Kreigbaum (the original defendants) would have determined the right of possession against the Green Mountain Coal Company. If indeed this company was in privity with any one's title it was with that of John Elliott, whose executors were substituted and who made defence. As, therefore, the plaintiff was obliged to proceed to trial and judgment against these, we cannot see that Eastwick's defence occasioned any delay; on the other hand, it had this advantage, that two adversary titles were disposed of by the one suit, and it is probable that for this very reason the plaintiff consented to his substitution. Be this as it may, it does not appear that Eastwick's defence was intended to shield the coal company, or that it had that effect.

The action for mesne profits must be governed by the same rules as govern ordinary actions of trespass. The plaintiff having recovered his possession by ejectment or otherwise, that possession, by operation of law, is extended back to the first moment of deforcement; hence all acts done upon the premises by the deforcer are to be regarded in no other light than as ordinary intrusions on the plaintiff's possession: 3 Bl. Com. 210. But ordinarily, in order to maintain a joint action of trespass against several defendants, some concert of action must be shown in the commission of the wrong complained of: Baird *v.* Yohn, 2 Casey 482. Now, were it shown that Eastwick's defence was intended to protect the possession of the coal company, or that this defence had been extended

beyond the necessary defence of his own title, and that he thereby wittingly protected the trespasses complained of, he might well be treated as a confederate with John and the coal company; but, that not appearing, we cannot agree that his interference in the ejectment in a lawful manner, with the plaintiff's consent, for the purpose of testing his own title and trying his own right of possession, shall of itself have the effect to make him responsible for trespasses he did not aid, abet or encourage, and which he could not prevent. It follows that the court below erred in holding that as Andrew M. Eastwick united with the defendants in the ejectment to maintain the possession as against the title of the plaintiff, he thereby rendered himself jointly liable with the coal company and John for mesne profits.

The remaining exceptions are not sustained. Those which relate to the answers and instructions of the court as to the western boundary of the Miller tract, were fully disposed of in the case of Malone *v.* Sallada, 12 Wright 419. In the disposition of that case, the Merrick Star survey was treated as a distinctly marked location of 1785, and as being known as such at the time of the trial; nevertheless, it was held that the surveyor who located the Miller tract could not have known the true situation of the Star tract, or he would not have called for it as an adjoiner of Evans, Brooks and Gilbert. The law governing settlement rights was properly laid down by the court below; the questions of amendment were also well settled. In like manner, the instructions with reference to the liability of the Green Mountain Coal Company, not only for the value of the coal taken from the property by its tenant, John, but also for the damage resulting from his manner of mining, are unexceptionable: King *v.* Baker, 1 Casey 186. The declarations of John as to the value of the coal were properly admitted as having some bearing as to its value in place. That part of the evidence, however, which related to the price at which he, John, had agreed to sell his lease, had so remote a bearing upon the subject in controversy that it might well have been excluded.

> The judgment is reversed, and a new venire is awarded as to Andrew M. Eastwick, and affirmed as to Samuel John and the Green Mountain Coal Company.